AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| United States of America<br>v.<br><br>Aaron Key<br><br><br>*Defendant(s)* | ) ) ) ) Case No.   **'19-MJ-161**<br>) )<br>) )<br>) ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  September 5, 2019  in the county of  Multnomah  in the  District of  Oregon , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1)<br><br>21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C) | On or about September 5, 2019, in the District of Oregon, the defendant (1) after knowingly being convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm; (2) knowingly and intentionally possessed with the intent to distribute 500 grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substance; and, (3) possessed with the intent to distribute a quantity of heroin a Schedule I controlled substance. |

This criminal complaint is based on these facts:

See affidavit of HSI Special Agent Clint Lindsly, which is attached and incorporated by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Clint Lindsly, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 5, 2019

_____
*Judge's signature*

City and state:  Portland, Oregon    Hon. John V. Acosta, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:          AFFIDAVIT OF CLINTON LINDSLY

**Affidavit in Support of a Criminal Complaint**

I, Clinton Lindsly, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I have been employed as a Special Agent (SA) by Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), since August of 2010. I am currently assigned to the ICE/HSI Office of the Assistant Special Agent in Charge, in Portland, Oregon narcotics unit. Previously, I was assigned to the ICE/HSI Office in Los Angeles, California, where I worked for over six years in a money laundering and narcotics group that specialized in undercover operations. My formal law enforcement training includes successfully completing the 23-week HSI basic training course at the Federal Law Enforcement Training Center in Glynco, Georgia. During the training, I learned how controlled substances are manufactured, consumed, packaged, marketed, and distributed. Since then, I have participated in dozens of drug investigations which utilized wiretaps, controlled purchase operations, physical surveillance, trash searches, electronic vehicle tracking, pole cameras, cars with hidden compartments used to transport drugs, buy / walks, buy / busts, cell phone geo-location techniques, cell-site simulators, undercover operations including narcotics and money laundering, informants, search warrants, interviews, arrests, and/or pen register/trap and trace orders. I have interviewed and managed informants in drug cases, prepared and executed search warrants, arrested and interviewed suspects, conducted physical

surveillance, and operated/utilized electronic and video surveillance during my drug investigations. I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking. In 2011, I was cross-designated with United States Code Title 21 Authority by the U.S. Drug Enforcement Administration to investigate narcotics cases. My most recent Title 21 authority update was on September 14, 2018. I have also participated in investigations related to the unlawful use and possession of firearms including violations of 18 U.S.C. §§ 922.

3. I have participated in many aspects of drug investigations. I am familiar with narcotics traffickers' methods of operation, including the manufacture, storage, transportation, and distribution of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering. I am also familiar as to the manner in which narcotics traffickers transport and distribute narcotics in areas they control. I am familiar with how drug traffickers utilize counter-surveillance techniques to avoid detection by law enforcement. Additionally, I have also been involved in investigations involving wiretaps as part of federal investigations into narcotics trafficking.

4. I also know that drug traffickers often communicate with their drug-trafficking associates through the use of cellular telephones. I have become aware that more sophisticated drug trafficking networks, in addition to using oral communications over cellar telephones, now utilize electronic communications such as email, WhatsApp, Blackberry devices or other smart phone devices, Voice over Internet Protocol, video chat, internet messaging services, and social networking sites to communicate with one another such as Facebook, Twitter, and Instagram. During drug-related communications, traffickers often use coded or cryptic language to disguise the drug-related nature of their conversations.

**Page 2 – Affidavit of Clinton Lindsly**

5.  I submit this affidavit in support of an application for an arrest warrant for the following person: **Aaron KEY** (DOB xx/xx/91) for violations of the federal criminal statutes involving being a prohibited person (felon) in possession of a firearm, pursuant to 18 U.S.C. § 922(g)(1), and for possession with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine and possession with the intent to distribute heroin, pursuant to of 21 U.S.C. §§ 841(a)(1)841(b)(1)(A), and 841(b)(1)(C).

And as set forth below, I have probable cause to believe that **KEY** has committed the above offenses.

6.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, a review of records related to this investigation, and information gained through my training and experience.

### Applicable Law

7.  Title 18 U.S. Code § 922(g)(1), provides that it is unlawful for any person who is who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year (a felony) to possess any firearm or ammunition or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

8.  Title 21 U.S.C. § 841(a)(1), provides that it is a violation of federal law to possess with intent to distribute controlled substances, such as methamphetamine and heroin.

///

///

Page 3 – Affidavit of Clinton Lindsly

## Statement of Probable Cause

A.  **Portland Police Bureau Officers Arrest Aaron KEY**

9.  On September 5, 2019, I was contacted by Portland Police Bureau (PPB) Officer William Congdon regarding a recent arrest of a suspect identified as Aaron KEY. PPB Officer Congdon provided me the following information:

10.  On September 5, 2019, PPB Officers William Congdon and PPB Officer Justin Raphael were conducting routine patrol in a known narcotics area located at or near SE 92nd Avenue and Stark Street in Portland, OR. This area was known by PPB as a high-volume trafficking area based off previous calls for service and/or arrests. During their patrol they identified a dark gray 2008 Dodge Magnum bearing Oregon license plate #710GWT (Magnum) leaving the Motel 6 located at 9225 SE Stark Street, Portland, OR 97216. While surveilling the Magnum, the officers observed the Magnum cut across three lanes of traffic to conduct a left hand turn and failed to signal in violation of Oregon Revenue Statue (ORS) 811.335. Pursuant to this moving violation, Officers activated their emergency lights and conducted a traffic stop at the 7-11 located at 575 SE 92nd Avenue, Portland, OR 97216.

11.  According to DMV records, I learned that the Magnum is registered to Robert Lawrence Wilcox 4927 Buffalo Drive SE, Salem, OR 97317 with VIN 2D4FV47T58H223339.

12.  The driver identified himself as Aaron KEY with DOB 8/xx/91 and stated that he did not have a Driver License on his person. During record inquiries, Officers learned that KEY was a registered sex offender in the State of Oregon and was currently out of status for failing to complete his annual check in, which was due on or before August 13, 2019. Based off this information, Officers believed they had probable cause to arrest KEY for violations of his state sex offender status.

Page 4 – Affidavit of Clinton Lindsly

13. Officers then instructed KEY to exit the vehicle. KEY failed to comply with the officers and attempted to start the vehicle in an apparent attempt to flee. PPB Officer Congdon reached into the vehicle to remove the ignition key and prevent the flight of KEY, which resulted in KEY pushing Officer Congdon and then getting out of the car and running from the scene. Officer Raphael attempted to deploy a Taser on KEY, which was ineffective. After a short foot pursuit, Officers were able to arrest KEY. During their attempt to arrest KEY, KEY fought with the officers and this resulted in an injury to the arm of PPB Officer Robert Brown, which required medical attention.

14. During a search incident to arrest of the Magnum, Officers located in plain view, an Arcus 9mm handgun with serial #29HP500061 with etchings that the firearm was manufactured in Bulgaria. The firearm was located between the driver seat and center console and was an area the officers saw KEY attempting to reach for just before he fled from the car. During a review of the firearm, Officers learned that the firearm was loaded with 9mm ammunition and that one round was chambered in the barrel. I know that this firearm was manufactured outside the District of Oregon and has previously been transported in interstate and foreign commerce.

15. Officers then observed a black backpack sitting in the front passenger seat of the vehicle. During a search of the backpack, Officers located 1,335.2 grams of crystal methamphetamine, a Schedule II controlled substance, and 73.8 grams of heroin, a Schedule I controlled substance, which both were presumptively positive during a field test for the identified controlled substances. Officers also recovered two scales with suspected narcotic residues and approximately $10,000 in United States currency.

**Page 5 – Affidavit of Clinton Lindsly**

16. After being provided this information, I conducted inquiries of KEY's criminal history. During my review of KEY's criminal history, I learned that KEY had the following felony convictions (convictions for crimes in which he faced or received more than one year of imprisonment):

    a. A 2011 federal felony conviction for a violation of Title 26 U.S.C. 5861(d) – Unlawful Possession of an Unregistered Firearm (a sawed-off shotgun), and was sentenced to 18 months prison;

    b. A 2011 felony conviction for a violation of 18 U.S.C 2421 – Transportation for Illegal Sexual Activity and was sentenced to 18 months prison, concurrently with the above charge; and,

    c. A 2017 state felony conviction for felon in possession of a firearm and was sentenced to 19 months of prison.

17. Based off my training and experience, I know that the possession of 1,335.2 grams of crystal methamphetamine and 73.8 grams of heroin is a large quantity of narcotics and is indicative of possession with the intent to distribute. These quantities of narcotics are well beyond what would be considered personal use. My opinion is further bolstered by KEY's possession of a firearm, a large amount of U.S. Currency, and multiple digital scales, which further indicates that KEY was involved in the distribution of narcotics.

## Conclusion

18. Based off information provided by PPB Officer Congdon, which included KEY in possession of an Arcus 9mm firearm manufactured in Bulgaria, which was involved in interstate and/or foreign commerce, and my review of KEY's criminal history, which included multiple felonies with sentencing greater than one year, I believe that KEY committed violations of 18

U.S.C. § 922(g)(1) – prohibited person in possession of a firearm involved in interstate and/or foreign commerce.

19. Based off information provided by PPB Officer Congdon, which included KEY in possession of 1,335.2 grams of methamphetamine and 73.8 grams of heroin, a firearm, digital scales, and a large amount of United States currency, I believe that KEY committed violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C) – possession with intent to distribute a controlled substance.

20. Prior to being submitted to the Court, the proposed complaint and the arrest warrant were all reviewed by Assistant United States Attorney ("AUSA") Scott Kerin and AUSA Kerin advised me that, in his opinion, the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

Clinton Lindsly
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 5th day of September 2019.

Honorable John V. Acosta
United States Magistrate Judge

Page 7 – Affidavit of Clinton Lindsly